862 So.2d 186 (2003)
STATE of Louisiana
v.
Ira ZERINGUE.
No. 03-KA-697.
Court of Appeal of Louisiana, Fifth Circuit.
November 25, 2003.
*189 Harry J. Morel, Jr., District Attorney, David L. Chaisson, Assistant District Attorney, Hahnville, LA, for The State of Louisiana, Plaintiff-Appellee.
Manina D. Dubroca, Luling, LA, for Ira Zeringue, Defendant-Appellant.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
On June 5, 2002, the St. Charles Parish District Attorney filed a bill of information charging defendant, Ira Zeringue, with carnal knowledge of a juvenile (Count 1), a violation of LSA-R.S. 14:80; and aggravated oral sexual battery (Count 2), a violation of LSA-R.S. 14:43.2. Defendant was arraigned on June 13, 2002, and pled not guilty to both charges.
On December 10, 2002, the State amended Count 2 of the bill of information, reducing the charge to oral sexual battery, a violation of LSA-R.S. 14:43.3. Defendant was arraigned with respect to the amended charge, and pled not guilty.
A bench trial was held on January 21 and 22, 2003. The court found defendant guilty as charged on both counts. On February 4, 2003, defendant filed a motion for post-verdict judgment of acquittal and a motion for new trial. The trial court heard and denied those motions on February 20, 2003.
On March 6, 2003, the court sentenced defendant to seven years at hard labor on both counts. The court further ordered that the sentence on Count 2 be served without benefit of parole, probation or suspension of sentence, and directed that the sentences run concurrently with each other. Defendant made an oral motion for appeal, and the judge granted the motion. Defendant filed a written motion for appeal on March 26, 2003. Defendant filed a motion to reconsider sentence on March 18, 2003. The trial court denied the motion on March 24, 2003.
Defendant now appeals on the basis of three assignments of error. For reasons stated more fully herein, we affirm conditionally defendant's convictions and sentence and remand the matter for an evidentiary hearing.
FACTS
A.B.[1], the victim in the instant case, testified that her date of birth is September 9, 1988, and that she lives in Boutte. As of May 14, 2002, A.B. had known defendant for two to three weeks. A.B. initially became acquainted with defendant through Damian Blake (Damian), the twenty-two-year-old brother of her classmate, Dana Blake (Dana). Defendant worked with A.B.'s step-brother, Lloyd Whitehead, Jr. (a/k/a Sonny), whose date of birth is August 17, 1981. According to an exhibit offered by the State, defendant, Ira Zeringue, was born on July 20, 1980.
A.B. testified that she and defendant were both at the Blakes' home between 3:30 and 4:00 p.m. on May 14, 2002. Mr. Blake, Dana's father, instructed defendant to leave the house. A.B. invited defendant to accompany her to her house, and defendant accepted. Damian drove A.B. and *190 defendant to the house where she lived with her mother, step-father, and Sonny. A short time later, Sonny drove defendant from there to his grandfather's house, where defendant picked up some clothing belonging to him. Sonny then drove defendant to Breaux's Motel, where defendant was living in a rented room. A.B. testified that she rode along with them in Sonny's truck. Defendant told A.B. that he liked her. A.B. asked defendant whether he wanted to come to her house that night to have sex with her, and defendant said he did.
A.B. later telephoned defendant at his motel room and told him to come to her house at 10:30 p.m. She testified that defendant arrived at the agreed-upon time and that she let him in at the front door. Her step-father and Sonny were asleep in the house, and her mother was using her computer behind closed doors. Defendant went into A.B.'s bedroom with her. Defendant performed oral sex on her, and the two engaged in vaginal intercourse. The encounter lasted forty to forty-five minutes and was consensual on A.B.'s part.
At 11:47 p.m., defendant and A.B. went outside to the backyard and smoked marijuana cigarettes provided by defendant. A.B. testified that this was not the first time she had smoked marijuana with defendant. Moreover, defendant performed oral sex on her in his hotel room prior to the May 14 incident.
Rene Whitehead, A.B.'s mother, testified that she went to the backyard at 11:45 p.m. to smoke a cigarette. She noticed the outside lights were on, although they are usually kept off. She saw a man with a cigarette in the yard. She then saw A.B. and asked her who the man was. A.B. responded that he was Ira. Defendant left the yard by jumping over the fence. Ms. Whitehead took A.B. inside and looked outside through a window. She saw defendant walking in front of the house. She recognized him because she had met him once when he came to her house to visit with Sonny and A.B. He was not wearing a shirt or shoes. Ms. Whitehead ordered defendant to leave the premises and threatened to call police if he returned.
Ms. Whitehead questioned A.B. as to what she and defendant had been doing at that hour. A.B. said they had been talking and smoking marijuana. A.B. testified that she discovered defendant's tennis shoes and shirt in her bedroom, along with a can of beer. She hid those items in her step-sister's room, as her step-sister was away that night.
Sonny Whitehead testified that he was at Damian Blake's house on the afternoon of May 15, 2002 when defendant arrived. The three young men went to a Wal-Mart store in Damian's truck. On the way there, defendant told Sonny he had had sex with A.B. the previous night. Sonny in turn told his father, and Mr. Whitehead confronted A.B. when she returned home from school that day. Ms. Whitehead returned home from work and also questioned A.B. Eventually, A.B. admitted that she had had sexual relations with defendant. Upon hearing A.B.'s story, Ms. Whitehead reported the incident to police. Detective Joe Lawler of the St. Charles Parish Sheriff's Office interviewed A.B. and her family and determined defendant to be a suspect in the matter.
Kevin Hollingsworth, a crime scene technician with the St. Charles Parish Sheriff's Office, testified that he collected evidence from A.B.'s home on May 15, 2002, including a pair of tennis shoes and a white T-shirt. A.B. identified State's Exhibit 2 as the tennis shoes defendant left at her house on the night of May 14, 2002. She further testified that State's Exhibit 4, a photograph, depicts defendant's shoes and T-shirt.
*191 Jamie Lynn Zammit testified that she saw defendant socially on the night of May 14, 2002. When she arrived home from work at 11:30 p.m., there was a message from defendant on her answering machine. The message prompted her to drive to Breaux's Motel. She arrived there between 11:40 and 11:45, and went to defendant's room. He was not there, so she left a note on the door and returned home. Defendant telephoned her right after she arrived at her house, and she returned to defendant's motel room. He was wearing sandals on his feet. She did not remember whether he was wearing a shirt. Defendant told her he had lost his tennis shoes but did not say how.
Ms. Zammit told Detective Lawler she had arrived at defendant's room the second time at 12:30 a.m., but she testified that she thought the time was closer to midnight. She remained with defendant in his room until 8:30 on the morning of May 15 when she dropped him off at his grandparents' house. Later that day, she picked defendant up at an unknown person's house[2] and took him with her to visit some friends in Kenner. They were there the whole afternoon. She did not recall seeing Sonny Whitehead that day.
Defendant testified on his own behalf at trial. He stated that he was living at Breaux's Motel in May 2002 because he and his step-father did not get along well. He testified that he saw Sonny and A.B. at Damian Blake's house on the afternoon of May 14, 2002. When Damian's father asked defendant to leave, Sonny and A.B. took him to his grandmother's house in Luling to get some money. Sonny later drove him to his grandfather's house to pick up his tennis shoes and some clean clothing. The group stopped at a Wal-Mart store, and then Sonny dropped off defendant at the motel. When he got out of the truck, he inadvertently left his tennis shoes. In all, defendant was with Sonny and A.B. between 12:30 a.m. and 2:00 a.m.
Defendant testified that he was not at the Whiteheads' house at any time on May 14, 2002. He did not have sexual relations with A.B. He was with Ms. Zammit on the night of May 14, 2002 through the morning of May 15, 2002.
ASSIGNMENT OF ERROR NUMBER ONE
The court erred in concluding that the state had met its burden of proving beyond a reasonable doubt a crucial element in both offenses charged, namely, the relative ages of the complainant and the aggressor.
DISCUSSION
By this assignment, defendant argues that the State's evidence was insufficient to sustain his convictions, as it failed to prove his age, an essential element of the charged offenses. When issues are raised on appeal as to one or more trial errors, the reviewing court should first determine sufficiency of the evidence. When the entirety of the evidence, including evidence that was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any issues regarding trial errors become moot. State v. George, 95-0110, p. 6 (La.10/16/95), 661 So.2d 975, 978; State v. Hearold, 603 So.2d 731, 734 (La.1992).
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most *192 favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Ortiz, 96-1609, p. 12 (La.10/21/97), 701 So.2d 922, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Williams, 99-223, p. 6 (La.App. 5 Cir. 6/30/99), 742 So.2d 604, 607.
Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Williams, 99-223 at p. 8, 742 So.2d at 608. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Captville, 448 So.2d 676, 678 (La.1984); State v. Qutoum, 02-780, p. 4 (La.App. 5 Cir. 1/28/03), 839 So.2d 323, 326, writ denied, 03-0595 (La.5/30/03), 845 So.2d 1059.
Defendant accurately argues that both of the statutes under which he was convicted require proof of the perpetrator's and the victim's ages. LSA-R.S. 14:80 provides, in pertinent part:
A. Felony carnal knowledge of a juvenile is committed when:
(1) A person who is nineteen years of age or older has sexual intercourse, with consent, with a person who is twelve years of age or older but less than seventeen years of age, when the victim is not the spouse of the offender; or
(2) A person who is seventeen years of age or older has sexual intercourse, with consent, with a person who is twelve years of age or older but less than fifteen years of age, when the victim is not the spouse of the offender ...
....
B. As used in this Section, "sexual intercourse" means anal, oral, or vaginal sexual intercourse.
LSA-R.S. 14:43.3 provides, in part:
A. Oral sexual battery is the intentional engaging in any of the following acts with another person, who is not the spouse of the offender when the other person has not yet attained fifteen years of age and is at least three years younger than the offender:
(1) The touching of the anus or the genitals of the victim by the offender using the mouth or tongue of the offender...
The age of the victim, A.B., at the time of the instant offenses was established by A.B.'s trial testimony. She gave her date of birth as September 20, 1988. She was, therefore, thirteen at the time of the instant offenses. In order to prove defendant's guilt as to Count 1, the State was required to prove that defendant was at least seventeen years old. As to Count 2, the State was required to prove that defendant was at least three years older than the victim.
Defendant correctly claims that the only direct evidence of his age produced at trial was the chain of custody form introduced during the testimony of crime scene technician Bill Slaton. Based on the date of birth listed on the document, defendant was twenty-one years of age at the time of the incident. The parties entered into a stipulation with respect to the document. The trial judge allowed the document to be admitted, accepting the parties' stipulation as to its authenticity. Defendant argues that the document was admitted for the limited purpose of showing chain of custody as to evidence the officers seized and could not be used as proof of his age. However, since the parties did not stipulate that the document's use would be limited to showing chain of *193 custody, the trial judge was entitled to use information on the form for any purpose. Moreover, as the State points out, the judge might have observed that defendant's date of birth appears on the bill of information. Defendant did not challenge the validity of that date.
We find that the State successfully proved that defendant's age met with the requirements of the statutes, regardless of whether the judge actually considered the aforementioned document as proof of age. In State v. Noil, 01-521, p. 25 (La.App. 5 Cir. 12/26/01), 807 So.2d 295, 313, writ denied, 02-0276 (La.10/25/02), 827 So.2d 1177, this Court held that "jury observation and circumstantial evidence can be used to infer the age of a defendant when no direct evidence of defendant's age is presented." (Citations omitted).
In the instant case, defendant's physical appearance was open to view by the judge. Defendant was living by himself in a motel room. He testified on cross-examination that, on October 15, 1998, nearly four years before the instant offenses, he pled guilty to three counts of simple burglary, three counts of simple criminal damage, and three counts of possession of stolen things. As a condition of his sentence, he was assigned to the IMPACT program. The judge could have inferred that defendant was charged and sentenced as an adult, considering that the IMPACT program[3] is not available to juvenile offenders (i.e., those under the age of seventeen). Moreover, it is likely defense counsel would have objected to questions regarding any juvenile convictions, as evidence of such convictions is not generally admissible at trial.
Defendant testified at trial that, on May 15, 2002, he wanted to go to a casino, but that his companions were not old enough. From that statement, it might be inferred that defendant was himself over the statutory minimum age (twenty-one) for gambling. Lastly, defendant testified that he bought beer at no less than three different places during the night at issue. Had defendant been below the legal drinking age of twenty-one, it is unlikely that three different stores would have sold him alcohol.
Based on the foregoing, we find that the circumstantial evidence was sufficient, under the Jackson test, to prove the element of age. This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER TWO
The court accepted defense counsel's motion to waive a jury trial outside the presence of the defendant and without determining whether the defendant had made a knowing and intelligent waiver of his right to be tried by a jury of his peers.
DISCUSSION
Defendant complains there is nothing in the record to show that he was properly informed of his right to a jury trial, or that he knowingly and voluntarily waived that right before the court proceeded with a bench trial. Although the right to a jury trial may be waived in non-capital cases, it must be "knowingly and intelligently" waived. LSA-C.Cr.P. art. 780(A). Waiver of this right is never presumed. State v. McCarroll, 337 So.2d 475, 480 (La.1976).
Where no valid jury waiver is found in the record, Louisiana appellate courts have traditionally set aside the defendant's conviction and remanded the matter for a new trial. State v. Williams, 404 So.2d 954 (La.1981); State v. Miller, 517 So.2d 1113 (La.App. 5 Cir.1987), writ denied, 523 So.2d 1335 (La.1988). However, the Louisiana *194 Supreme Court, in State v. Nanlal, 97-0786 (La.9/26/97), 701 So.2d 963, set out a procedure by which the case is initially remanded to the trial court for an evidentiary hearing on the question of whether the defendant validly waived the right to a jury trial. The Nanlal court held that, if the trial court finds the defendant did not make a valid waiver of his right to a jury trial, the court must set aside his conviction and sentence and grant him a new trial. The court further reserved the defendant's right to appeal any adverse ruling on the waiver issue. Id. This Court has followed the procedure set forth in Nanlal. See, State v. Lokey, 02-1087 (La. App. 5 Cir. 2/25/03), 840 So.2d 653, 656; State v. Terrase, 02-1009 (La.App. 5 Cir. 2/25/03), 841 So.2d 947, 950.
Defendant asserts that a remand under Nanlal would be fruitless in this case, arguing that "[i]n the case at bar, it is undisputed that the defendant did not waive his right to a jury trial through counsel in open court in the defendant's presence." However, on remand, the court will determine, through an evidentiary hearing, whether there was a valid jury waiver that is simply absent from the record before this Court.
On June 13, 2002, the court held an arraignment and preliminary hearing. There is nothing in the minute entry for that date or in the transcript of the proceedings to show that the trial court advised defendant of his right to a jury trial, or that defendant waived that right. Similarly, there is nothing in the trial transcript to show that defendant was advised of his right to a jury trial. The minute entries pertaining to the trial proceedings and the various status conferences held prior to trial are devoid of any mention of defendant's right to trial by jury.
The only evidence of defendant's intention to waive his right to a jury trial is a letter from defense counsel to the trial judge dated January 16, 2003. Counsel wrote, "Dear Judge St. Pierre: This letter is formal notification to the court that Ira Zeringue has chosen to waive the jury in the referenced matter scheduled for January 12, 2003." There is an order handwritten by the judge at the bottom of the letter, granting defendant's motion to waive a jury. The letter is not sufficient evidence that defendant knowingly and intelligently waived his right to a jury trial. In State v. Pierre, 98-1123 (La.App. 5 Cir. 4/14/99), 733 So.2d 674, 679, this Court held that the defense attorney's statement that, "we're going to waive the jury, Your Honor" did not, on its own, constitute a valid waiver of the defendant's right to trial by jury.
In State v. Pierre, 02-2665 (La.3/28/03), 842 So.2d 321 (Per Curiam),[4] the Supreme Court updated the guidelines for valid jury waivers, stating:
Although it remains the preferred method for the district court to advise a defendant of her right to trial by jury in open court before obtaining a waiver, such a practice is not statutorily required. See La.C.Cr.P. art. 780; State v. Kahey, 436 So.2d 475, 486 (La.1983); State v. Muller, 351 So.2d 143, 146-47 (La.1977). Likewise, it is preferred but not necessary, for the defendant to waive her right to jury trial personally. State v. Wolfe, 98-0345, pp. 6-7 (La.App. 4th Cir.4/21/99), 738 So.2d 1093, 1097. Counsel may waive the right on the defendant's behalf, provided that the defendant's decision to do so was made *195 knowingly and intelligently. Id.; Kahey, 436 So.2d at 486-87.
In the instant case, the record reflects that counsel waived a jury trial on the defendant's behalf. On the second day of trial, the district court memorialized the defendant's earlier waiver in her presence. At this time, defense counsel stated that he and his client had discussed the waiver at length and on several occasions, and that both agreed to the waiver. In these circumstances, the court of appeal erred in its determination that the defendant did not waive her right to a jury trial knowingly and intelligently.
The facts in defendant's case are distinguishable from the facts the Supreme Court addressed in State v. Pierre, in that there is nothing in the instant record to show that defense counsel extensively discussed with defendant his right to a jury trial, or that defendant understood his right and knowingly and intelligently agreed to the waiver. Moreover, the trial court in Pierre accepted the waiver in defendant's presence. There is no evidence that such was the case here.
Based on the foregoing, this case will be remanded for an evidentiary hearing on the question of whether defendant validly waived his right to a jury trial. If he did not, the trial judge must set aside the conviction and sentence, and set the case for further proceedings as dictated by the holding in Nanlal. If the trial court rules there was a valid waiver, defendant's right to appeal this ruling will be reserved. State v. Terrase, supra.
ASSIGNMENT OF ERROR NUMBER THREE
The court was wrong as a matter of law in concluding that the rape shield statute makes all evidence of the sexual history of the complainant irrelevant. Such evidence may be introduced where the purpose is to undermine credibility or to establish bias or motive.
DISCUSSION
Here, defendant complains the trial court erred in barring him from examining A.B. and other witnesses with regard to alleged sexual contact she had with her step-brother, Sonny Whitehead. Defendant argues that the court's restrictions wrongly deprived him of his right of confrontation and to present a defense.
The Sixth Amendment to the United States Constitution and Article I, § 16 of the Louisiana Constitution guarantee an accused in a criminal prosecution the right to be confronted with the witnesses against him. The primary purpose behind this right is to secure for the defendant the opportunity for cross-examination. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. State v. Hillard, 398 So.2d 1057, 1059 (La.1981).
An accused also has a constitutional right to present a defense. Washington v. Texas, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967). As a general rule, a party may attack the credibility of a witness by examining him or her concerning any matter having a reasonable tendency to disprove the truthfulness of his or her testimony. LSA-C.E. art. 607(C). The right of an accused sex offender to present a defense is, however, balanced against the victim's interests under LSA-C.E. art. 412, which is meant to protect the victim of sexual assault from having her sexual history made public. The rape shield law is precisely drawn to exclude evidence of the alleged victim's sexual history with persons other than the defendant. Subpart B(1) of the article does make an exception for "[e]vidence of *196 past sexual behavior with persons other than the accused, upon the issue of whether or not the accused was the source of semen or injury ..." That subpart did not apply to the instant case. Although the record shows that a "rape kit" was performed on the victim, no evidence regarding semen or physical injury was produced at trial.
The rape shield statute does not apply when a defendant attempts to use evidence of a victim's false allegations of improper sexual behavior to impeach the victim's credibility. State v. Smith, 98-2045, p. 5 (La.9/8/99), 743 So.2d 199, 203; State v. Wallace, 00-1745 (La.App. 5 Cir. 5/16/01), 788 So.2d 578, 587, writ denied, 01-1849 (La.5/24/02), 816 So.2d 297. The relevant inquiry for the trial court in such an instance is whether reasonable jurors could find, based on the evidence presented by the defendant, that the victim made prior false accusations. Smith, 743 So.2d at 203; State v. Wallace, supra. The evidence defendant sought to elicit at trial did not fit under this exception. Defendant did not attempt to show that the victim, A.B., had previously made false claims of sexual assault.
In cross-examining A.B., defense counsel asked her whether she had had sexual relations with Sonny. The State objected on grounds of relevancy, and the court sustained the objection. Counsel then asked A.B. whether her mother had ever questioned her regarding her sexual relationship with Sonny. The State again objected on grounds of relevancy, and the court sustained the objection. The defense questioned Sonny Whitehead about whether he had ever had an intimate relationship with A.B. The State objected, and the court sustained the objection. Defense counsel asked Megan Stabile, A.B.'s classmate and friend, about the victim's sexual behavior. Again, the court disallowed the line of questioning. The defense recalled A.B. to testify in its case-in-chief. Counsel again attempted to elicit information about her relationship with Sonny. The State objected, and the court sustained the objection. The defense called Megan Matherne, A.B.'s best friend, to testify. The court disallowed questions regarding what Megan knew about A.B.'s relationship with Sonny. Defense counsel attempted to question Samantha Burleigh, another classmate of the victim's, about whether she had heard A.B. say she had had sexual relations with Sonny. The court disallowed the questioning.
Defendant complains that he was prejudiced by the trial court's refusal to allow him to make a proffer of the evidence he sought to elicit in order to preserve it for appeal. This argument has no merit. Article 412 provides that before a person accused of committing a crime that involves sexually assaultive behavior may offer evidence of the victim's past sexual behavior, the accused shall make a written motion to offer such evidence, accompanied by a written statement of evidence setting forth the names and addresses of persons to be called as witnesses. LSA-C.E. art. 412(C)(1). The motion shall be made within the time for filing pre-trial motions specified in LSA-C.Cr.P. art. 521, except that the trial court may allow the motion to be made at a later date. LSA-C.E. art. 412(D). After the motion is filed, the trial court determines the admissibility of the evidence at a hearing. LSA-C.E. art. 412(E). There is no evidence in the record that defendant complied with those requirements. In State v. Hotoph, 99-243 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1047, writs denied, 00-0150 (La.6/30/00), 765 So.2d 1066, 99-3477 (La.6/30/00), 765 So.2d 1062, this Court found that, because the defendant had failed to make the proper motion under Article 412, he waived the *197 right to introduce any evidence of the victim's past sexual history.
Moreover, defendant was not prejudiced by the restrictions the trial court placed on testimony having to do with A.B.'s sexual relationship with her step-brother. Counsel managed to elicit from A.B.'s mother an admission that she had learned of A.B.'s sexual involvement with Sonny. This assignment of error is without merit.
ERRORS PATENT DISCUSSION
The record was reviewed for errors patent. LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Wetland, 556 So.2d 175 (La.App. 5 Cir. 1990). The review reveals no errors patent in this case.
DECREE
Accordingly, for the reasons assigned herein, the conviction and sentence of defendant are conditionally affirmed on the evidence in the record on appeal. See, State v. Snyder, 98-1078 (La.4/14/99), 750 So.2d 832. However, a final determination of the appeal is pretermitted, and the case is remanded to the trial court to conduct an evidentiary hearing on the question of whether defendant validly waived his right to a jury trial, and for further proceedings, if necessary, pursuant to the holding in State v. Nanlal, 97-0786 (La.9/26/97), 701 So.2d 963. If the evidence shows that defendant did not make a valid waiver of his right to a jury trial, the district court must set aside his convictions and sentence and grant him a new trial. Defendant may appeal from any adverse ruling on the waiver issue, and in the absence of such an appeal, defendant's convictions and sentence will be affirmed.
CONVICTION AND SENTENCE CONDITIONALLY AFFIRMED; CASE REMANDED FOR EVIDENTIARY HEARING
NOTES
[1] For purposes of this opinion, under the authority of LSA-R.S. 46:1844(W)(3), only the victim's initials will be used.
[2] It appears from Ms. Zammit's testimony that she referred to Damian Blake's house.
[3] IMPACT is an intensive program of parole supervision established by LSA-R.S. 15:574.4.
[4] The supreme court's Per Curiam is unrelated to this Court's case of the same name, cited above.