889 So.2d 1151 (2004)
STATE of Louisiana
v.
Paul C. LOKEY.
No. 04-KA-616.
Court of Appeal of Louisiana, Fifth Circuit.
November 30, 2004.
*1152 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Anne Wallis, William Credo, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Holli Herrle-Castillo, Louisiana Appellate Project, Marrero, LA, for Defendant/Appellant.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY and WALTER J. ROTHSCHILD.
MARION F. EDWARDS, Judge.
This is defendant Paul Lokey's second appeal. Here, Lokey argues that the State failed to prove that he waived his right to a jury trial, and that the five-year home incarceration sentence was excessive. Because we find merit in his contention regarding waiver of a jury trial, we vacate the conviction and remand the matter for a new trial.
We initially considered the merits of this matter in the first appeal[1], and need not reiterate the underlying facts here. In that case, in an error patent review, this Court found that the record failed to reflect that Lokey waived his right to a jury trial. We conditionally affirmed Lokey's conviction and remanded the case for an evidentiary hearing on the question of whether Lokey validly waived his right to a jury trial and for further proceedings, if necessary.
On July 21, 2003, the trial court held an evidentiary hearing and found that there was a valid jury trial waiver. On that same date, the trial court resentenced Lokey to sixty days without benefit of parole, probation, or suspension of sentence, with the balance of the ten-year sentence which was originally imposed to remain in effect. The court also ordered Lokey to serve five years of home incarceration once he was released, to be followed by five years of active probation; to pay a fine of $5,000; and to comply with all the other conditions required under the statute. On October 21, 2003, the original commitment was amended to show that the balance of the ten-year sentence was suspended.
Lokey argues that the State failed to prove that he validly waived his right to trial by jury. La. R.S. 14:98(E) provides that conviction of a fourth offense DWI subjects a defendant to a sentence of between ten and thirty years at hard labor in prison. Under La.C.Cr. P. art. 782, Lokey was entitled to a 12-person jury trial.
During the evidentiary hearing, attorney Darryl Harrison testified that, in the course of representing Lokey, he discussed with him the benefits of choosing a judge (bench) trial. Mr. Harrison stated that he was concerned that Lokey's previous DWI convictions could prejudice the jury, and that he explained to Lokey at that time that DWI cases were very high profile cases of which the public would probably have a very bad perception.
Mr. Harrison informed Lokey that a judge would be more objective and listen *1153 strictly to the evidence. He recalled explaining the benefits of a bench trial to him on at least two occasions: the first time was shortly after Lokey was arraigned, and the second time was before the trial started. Mr. Harrison testified that Lokey indicated to him that he understood the benefits of a bench trial and that based on Lokey's understanding, Mr. Harrison chose the bench trial.
Mr. Harrison further testified that Lokey was in agreement with that course of action on the two occasions that he met with him. Mr. Harrison stated that he had been practicing law for approximately nineteen years. He testified that Lokey had engaged his services in May of 2001, that he had met with him approximately five to eight times, and that, in his opinion, Lokey knowingly and intelligently waived the jury trial.
Lokey testified that Mr. Harrison represented him for the fourth offense DWI trial. He explained that he did not know what kind of trial he was going to have until they got to the courtroom, and that Mr. Harrison told him he was not going to put him on the stand because it might look bad. Lokey testified that it was Mr. Harrison's decision to waive the jury and proceed to trial with the judge. He claimed that Mr. Harrison did not discuss that option with him, and that Mr. Harrison just told him that "that's the way it was."
On cross-examination, Lokey testified that he and Mr. Harrison had discussed his case, but denied that they had discussed whether to have a judge or a jury trial. He further testified that he heard Mr. Harrison testify at the hearing, and that Mr. Harrison was lying. Lokey claimed that Mr. Harrison never mentioned his previous DWI convictions and how that might prejudice him if he had a jury trial. Lokey explained that he thought he was going to have a jury trial because he had discussed with Mr. Harrison the fact that he had an eyewitness, that what the police officer did was wrong, and that he (Lokey) could present his side of the story. He testified that when they got to court, that Mr. Harrison said, "[n]o."
Lokey further testified that he was present when the trial took place, and that he did not explain to the judge that he wanted a jury trial because he did not know about the law or what he could or could not do. Lokey did not remember being told at the arraignment that he had the opportunity to be tried by a jury, and claimed that he did not know he could have a jury trial. He testified that when he got to the courtroom and learned he would have a judge trial, that he expressed his concern to Mr. Harrison. He stated that he had pleaded guilty to the three previous offenses and had not gone to trial on them.
After hearing the testimony, the trial judge stated:
First of all, Mr. Lokey, I was the presiding judge over this trial. I remember it. I remember it well because we seldom get fourth offense DWI's that actually go to trial. And as I recall the  Your attorney, Mr. Harrison informed the court that you had elected to waive a jury trial and that you wished to proceed with a judge trial in this matter. At that time there was no indication from you that you did not understand that you were waiving your rights to a jury trial and electing to voluntarily proceed with a judge trial in this matter and at that time, I found that you had made a knowing, intelligent, and voluntary waiver. And I find today, based upon the testimony, that you did, in fact, make a knowing, intelligent and voluntary waiver and that you were fully advised as to your rights to a jury trial in connection to this matter and it was of your own volition and your own decision *1154 to waive that jury trial. Therefore, I find that it was, in fact, a valid waiver of the jury.
A defendant may waive his right to a jury trial and elect to be tried by the judge. LSA-C.Cr.P. art. 780. Generally, the waiver is to be entered at arraignment. However, the trial judge may accept a waiver of a jury trial at any time prior to the commencement of trial. LSA-C.Cr.P. art. 780(B). A waiver of trial by jury is valid only if the defendant acted voluntarily and knowingly.[2] The waiver must be express and is never presumed.[3] The record must show a knowing and intelligent waiver.[4]
Although it remains the preferred method for the district court to advise a defendant of the right to trial by jury in open court before obtaining a waiver, such a practice is not statutorily required.[5] Likewise, it is preferred, but not necessary, for the defendant to waive the right to jury trial personally.[6] Counsel may waive the right on the defendant's behalf, provided that the defendant's decision to do so was made knowingly and intelligently.[7]
In the present case, the transcript of the DWI trial indicates that defense counsel and Lokey were present in open court on January 23, 2002, the day of trial, and that defense counsel stated simply, "[w]e're ready for trial". No objection was stated by Lokey at that time. On the other hand, no discussion of the choice of a judge versus a jury trial was made on the record. There was no evidence either at the trial of this matter, or in the minutes, to indicate that Lokey waived his right to a jury either personally or through his attorney. Defense counsel did not, at the DWI trial, refer to any conversation or agreement with Lokey on the issue, although he did testify at the hearing on remand that he had discussed the issue with his client. We find that testimony inadequate to show that counsel sufficiently explained Lokey's rights regarding a jury trial (as opposed to the possible benefits of a judge trial) thus insuring a knowing and intelligent waiver. Further, we cannot consider the comments of the trial judge as evidence. Because of lapses such as these that occur, this court urges, in the strongest possible terms, that to accomplish a clear and certain record, the trial judge conduct an in-court dialogue with the defendant regarding waiver of a jury trial.
This court has previously found that a letter notifying the trial court that the defendant has chosen to waive the jury was not sufficient to evidence a knowing and intelligent waiver.[8] Similarly, under the circumstances in this case, we find that the State failed to show that there was a valid jury trial waiver. Therefore, we vacate his conviction, set aside his sentence, and remand the matter for a new trial.
*1155 CONVICTION VACATED; SENTENCE SET ASIDE; REMANDED FOR NEW TRIAL.
NOTES
[1] State v. Lokey, 02-1087 (La.App. 5 Cir. 2/25/03), 840 So.2d 653, writ denied 03-1212 (La.11/7/03), 857 So.2d 518.
[2] State v. Quest 00-205 (La.App. 5 Cir. 10/18/00), 772 So.2d 772, writ denied XXXX-XXXX(La.11/02/01) 800 So.2d 866, citing State v. Kahey, 436 So.2d 475, 486 (La.1983).
[3] Id.
[4] Id; State v. Williams, 99-223 (La.App. 5th Cir.6/30/99), 742 So.2d 604.
[5] State v. Pierre, 2002-2665 (La.3/28/03), 842 So.2d 321.
[6] State v. Pierre 2002-2665 (La.3/28/03), 842 So.2d 321; State v. Wolfe, 98-0345, (La.App. 4th Cir.4/21/99), 738 So.2d 1093, 1097.
[7] Id.
[8] See State v. Zeringue, 03-697 (La.App. 5 Cir. 11/25/03), 862 So.2d 186, writ denied 03-3523 (La.4/23/04), 870 So.2d 298. See also State v. Onstead 03-1314 (La.App. 5 Cir. 5/26/04) 875 So.2d 908.