901 So.2d 498 (2005)
STATE of Louisiana
v.
Troy McCLOUD.
No. 04-KA-1112.
Court of Appeal of Louisiana, Fifth Circuit.
March 29, 2005.
*501 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Desirée M. Valenti, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Laura M. Pavy, Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant.
Troy McCloud, Angola, Louisiana, in Proper Person.
Panel composed of Judges SOL GOTHARD, MARION F. EDWARDS and CLARENCE E. McMANUS.
CLARENCE E. McMANUS, Judge.

STATEMENT OF THE CASE
On November 13, 2002, the Jefferson Parish District Attorney filed a bill of information charging defendant, Troy McCloud, with distribution of cocaine within one thousand feet of a school, LSA-R.S. 40:981.3. Defendant was arraigned on November 20, 2002, and pled not guilty.
On February 5, 2003, defendant filed a Motion to Appoint Sanity Commission to Determine Competency to Stand Trial. The trial court granted the motion and appointed a sanity commission. The court held a competency hearing on March 18, 2003. The parties stipulated to the contents of the doctors' report, and the court found defendant competent to stand trial.
On April 8, 2003, the trial court heard and denied defendant's motions to suppress evidence and identification. On that day, the state amended the bill of information to change the police item number.
*502 On August 25, 2003, Judge Martha Sassone, the presiding judge, issued an Order of Recusal, directing that defendant's case be realloted. The case was thereafter assigned to Judge Greg Guidry, Division "E" of the Twenty-Fourth Judicial District Court. On November 13, 2003, defense counsel indicated that defendant wished to waive his right to a jury trial. The court held a bench trial that day, and found defendant guilty as charged.
Defendant filed a pro se Motion for New Trial on December 4, 2003. The motion was argued and denied on February 2, 2004. On that day, the court sentenced defendant to forty-five years at hard labor, directing that the first two years of the sentence be served without benefit of parole, probation, or suspension of sentence. Defendant made an oral motion for appeal. On February 3, 2004, defendant filed a Motion for Reconsideration of Sentence and a Motion for Appeal. The trial court granted the appeal motion on February 4, 2004. The trial court set defendant's Motion for Reconsideration of Sentence for hearing, but no ruling is found in the record.
The state filed a Multiple Offender Bill of Information on February 17, 2004, alleging defendant to be a third felony offender. On May 20, 2004, the trial court held a habitual offender hearing, and found defendant to be a third felony offender. On that day, the court vacated defendant's original sentence, and imposed an enhanced sentence of sixty-five years at hard labor, without benefit of parole, probation, or suspension of sentence. Defendant made an oral motion for appeal, and the court granted the motion that day.

FACTS
Agent Vincent Carter testified that he is an undercover narcotics officer with the Jefferson Parish Sheriff's Office. On the afternoon of October 1, 2002, he went to a part of Marrero known as "Field of Dreams." Carter testified that the neighborhood is a high drug trafficking area. The agent was in an unmarked truck, which was equipped with audio and video equipment.
Carter stopped his truck at the corner of Fields Street and Ames Boulevard. Defendant approached the driver's side window of the vehicle. Carter attempted to buy cocaine from defendant, but defendant sensed he was an officer and would not deal with him at that point. Defendant got into the back of Carter's truck, and Carter drove a short distance to the corner of Fields and Meyers. Defendant went to the vehicle's passenger side window and sold Carter one rock of crack cocaine. Carter paid defendant with a marked twenty dollar bill and then left the area. Carter turned over the cocaine to Agent Eric Dufrene, a nearby surveillance officer. Dufrene testified that he measured the distance from the corner of Fields and Meyers to the Ames Elementary School to be less than one thousand feet. The videotape of the transaction was played for the court at trial. Carter identified defendant as the subject who was seen approaching the driver's side window. Carter noted that the video camera in his truck was positioned to record what occurred on the driver's side of the truck only. Since the cocaine transaction took place on the passenger side of the truck, it was not recorded.
Deputy Kurt Zeagler testified that he was working in uniform on the afternoon of October 1, 2002. Agent Carter contacted him by police radio following the transaction and gave him a description of the perpetrator and his location. Zeagler located defendant, who met the description given by Carter. Zeagler stopped defendant for a field interview. The officer *503 obtained defendant's name, address, height, weight, date of birth, and Social Security number. He recorded the information on a field interview card. Zeagler also took a Polaroid photograph of defendant.
Agent Dufrene testified that he compiled a photographic lineup using the Automated Fingerprint Identification System (AFIS). He showed Agent Carter the videotape made during the cocaine transaction. Dufrene then showed Carter the photographic lineup. Carter identified defendant as the man who sold him the crack cocaine. Carter also identified defendant at trial. Zeagler testified that he obtained a warrant for defendant's arrest based on Carter's identification.
Defendant testified at trial that at 3:00 p.m. on October 1, 2002, he was leaving a McDonald's restaurant, and was going to have his hair fixed on Fields Street. He testified that he spoke with Carter at the corner of Field and Ames, but that he did not get into the back of Carter's truck. Defendant admitted he was pictured in Carter's videotape, but he denied that he gave Carter crack cocaine or that he received any money from the officer. He testified that the Polaroid photograph was a picture of him but said he did not know how the photograph was taken.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant contends the record does not show a valid waiver his right to a trial by jury. He urges the court to reverse his conviction and remand for a new trial. Although the right to a jury trial may be waived in non-capital cases, it must be "knowingly and intelligently" waived. LSA-C.Cr.P. art. 780(A). Waiver of this right is never presumed. State v. McCarroll, 337 So.2d 475, 480 (La.1976); State v. Zeringue, 03-697, p. 10 (La.App. 5 Cir. 11/25/03), 862 So.2d 186, 193, writ denied, 03-3523 (La.4/23/04), 870 So.2d 298.
Although it remains the preferred method for the district court to advise a defendant of the right to a jury trial in open court before obtaining a waiver, that practice is not statutorily required. State v. Pierre, 02-2665 (La.3/28/03), 842 So.2d 321 (per curiam); State v. Lokey, 04-616 (La.App. 5 Cir. 11/30/04), 889 So.2d 1151, 1154.[1] It is, likewise, preferred, but not necessary, for the defendant to waive the right to a jury trial personally. Id. Counsel may waive the right on the defendant's behalf, provided the defendant's decision to do so was made knowingly and intelligently. Id.
The minute entry for November 11, 2003, the day of trial, reflects that "The Defendant waived his rights to a jury trial." The transcript of that proceeding shows that the following exchange took place just before the commencement of trial:
MR. THOMAS [defense counsel]:
Your Honor, Mr. McCloud informed me as the jury was coming into the room that he had changed his mind and wanted to go with a Bench trial.
THE COURT:
Well, it's certainly his prerogative.
MR. THOMAS:
I apologize to the Court that we didn't notify you earlier, but it is Mr. McCloud's choice.
THE COURT:

*504 Well, as long as he is aware that once the trial beginsand it will begin as soon as the State calls its first witness that he can't change his mind once again on that.
There is nothing in the record to show that defendant was fully informed of his right to a jury trial, either by the court or by his attorney. Moreover, there is no indication in the record that defendant's waiver was knowingly and intelligently made.
Accordingly, we conditionally affirm defendant's conviction and sentence, and remand the case for an evidentiary hearing on the question of whether defendant validly waived his right to a jury trial. We further instruct the trial court to vacate defendant's conviction and sentence if it finds there was no valid jury waiver, and to grant defendant a new trial. Conversely, if the trial court finds there was a valid jury waiver, defendant's conviction and sentence should be affirmed, and defendant allowed the right to appeal the adverse ruling.

ASSIGNMENT OF ERROR NUMBER TWO
By this assignment defendant complains that his sixty-five-year habitual offender sentence is excessive. Defendant filed a Motion for Reconsideration of Sentence on February 3, 2004, following his original sentencing. There is no indication in the record that the trial court ruled on the motion. The trial court subsequently vacated the original sentence and imposed the habitual offender sentence. Defendant did not file a motion to reconsider sentence following the imposition of the enhanced sentence. The failure to file a motion to reconsider sentence, or to state the specific grounds upon which the motion is based, limits a defendant to a review of the sentence only for constitutional excessiveness. State v. Dupre, 03-256, p. 7 (La.App. 5 Cir. 5/28/03), 848 So.2d 149, 153, writ denied, 03-1978 (La.5/14/04), 872 So.2d 509.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677 (citing State v. Dorthey, 623 So.2d 1276 (La.1993)). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lobato, 603 So.2d 739, 751 (La.1992).
Three factors to be considered in reviewing a sentence for excessiveness are: (1) the nature of the crime; (2) the nature and background of the offender; and (3) the sentences imposed for similar crimes by the same court and other courts. State v. Tracy, 02-0227, p. 21 (La.App. 5 Cir. 10/29/02), 831 So.2d 503, 516, writ denied, 02-2900 (La.4/4/03), 840 So.2d 1213. The trial judge has wide discretion in imposing sentences within the statutory limits, and a sentence will not be set aside if it is supported by the record. State v. Taylor, 02-1063, p. 11 (La.App. 5 Cir. 2/25/03), 841 So.2d 894, 900, writ denied, 03-0949 (La.11/7/03), 857 So.2d 516.
As a third felony offender, defendant was exposed to a sentencing range of thirty to ninety years. LSA-R.S. 40:981.3(E); LSA-R.S. 40:967(B)(4)(b); LSA-R.S. 15:529.1(A)(1)(b)(i). Defendant argues that the trial court should have imposed a lesser sentence, considering that the offense involved only a small amount of *505 crack cocaine. This was not, however, defendant's first narcotics offense. One of the prior offenses alleged in defendant's habitual offender bill was a 1998 conviction for distribution of cocaine.
We find the trial court acted within its broad discretion in imposing a sixty-five-year sentence. Therefore, defendant's sentence is affirmed.

ASSIGNMENT OF ERROR NUMBER THREE
By Defendant's third assignment of error, he requests a review of the record for errors patent. After a review of the record, the following matters are presented for discussion.
First, the state amended the bill of information on April 8, 2003, to change the police item number. There is no evidence in the record that the court arraigned defendant on the amended bill. Defendant proceeded to trial without objection, and, thereby, waived any irregularity. LSA-C.Cr.P. art. 555; State v. Echeverria, 03-898, p. 11 (La.App. 5 Cir. 11/25/03), 862 So.2d 163, 169. Therefore, no corrective action is required.
Second, the trial court sentenced defendant immediately after denying his new trial motion. LSA-C.Cr.P. art. 873 requires a twenty-four-hour delay in sentencing after denial of a motion for new trial, unless the defendant waives said delay. The record shows that defendant did not waive the delay. As a general rule, when a defendant challenges a non-mandatory sentence, and the delay is not waived, the defendant's sentence must be vacated, and the matter remanded for re-sentencing. But when the original sentence has been set aside at a habitual offender proceeding, as was the case here, the failure to observe the twenty-four-hour delay is harmless. State v. Sims, 02-1244, p. 10 (La.App. 5 Cir. 4/29/03), 845 So.2d 1116, 1122, writ denied, 03-2189 (La.8/20/04), 882 So.2d 570. Therefore, this error requires no corrective action.
Third, the trial court erred in failing to rule on defendant's Motion for Reconsideration of Sentence, filed after his original sentencing. This error is moot, however, because the original sentence was vacated at the habitual offender hearing.
Fourth, the trial court erred in ordering that defendant's entire habitual offender sentence be served without benefit of parole. When a defendant is sentenced as a habitual offender, "`[t]he penalty increase is computed by reference to the sentencing provisions of the underlying offense. Similarly, the conditions imposed on the sentence are those called for in the reference statute.'" State v. Fletcher, 03-60, p. 13 (La.App. 5 Cir. 4/29/03), 845 So.2d 1213, 1222 (quoting State v. Bruins, 407 So.2d 685, 687 (La.1981)). Under LSA-R.S. 15:529.1(G), defendant's sentence is to be served without benefit of probation or suspension of sentence. The Habitual Offender Law does not deprive defendant of parole eligibility. LSA-R.S. 40:967(B)(4)(b) requires that the first two years of defendant's sentence be served without benefit of parole, probation, or suspension of sentence. The trial court was only authorized to impose the first two years of the habitual offender sentence without benefit of parole.
In cases in which the trial court's sentencing error does not involve the omission of a restrictive term required by statute, but the imposition of limits beyond what the legislature has authorized, an appellate court should not rely on LSA-R.S. 15:301.1(A) to correct the error as a matter of law, but should correct the sentence pursuant to its authority under LSA-C.Cr.P. *506 art. 882 to correct an illegal sentence "at any time." See, State v. Green, 04-357 (La.App. 5 Cir. 11/16/04), 890 So.2d 6, 12.[2] Therefore, we amend the habitual offender sentence to delete the portion requiring the entire sentence to be served without parole. We also order that only the first two years of the sentence be served without benefit of parole.
Finally, the trial court erred in failing to advise defendant of the two-year prescriptive period for applying for post-conviction relief under LSA-C.Cr.P. art. 930.8. Therefore, we order the trial court to provide defendant with proper notice of the prescriptive period, either verbally or in writing, and to file written proof of said notice in the record. See, State v. Taylor, 04-90, p. 14 (La.App. 5 Cir. 5/26/04), 875 So.2d 962, 972, writ denied, 04-1649 (La.11/19/04), 888 So.2d 193.

ASSIGNMENT OF ERROR NUMBER ONE (PRO SE)
In his first pro se assignment of error, defendant argues that Agent Carter's photographic identification should have been suppressed, as the identification procedure was suggestive, and the record shows a substantial likelihood of misidentification. Defendant raised the issue in a pre-trial motion to suppress the identification. The trial court heard and denied that motion on April 8, 2003, without reasons.
Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). In Manson v. Brathwaite, the United States Supreme Court listed five factors to be considered in determining whether an identification is reliable: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. A trial court's determination of the admissibility of an identification should be accorded great weight and will not be disturbed on appeal unless the evidence reveals an abuse of discretion. Id.
An identification procedure is suggestive if it unduly focuses a witness' attention on the suspect. State v. Bright, 98-0398, p. 17 (La.4/11/00), 776 So.2d 1134, 1143. A defendant attempting to suppress an identification must prove both that the identification itself was suggestive and that there was a likelihood of misidentification as a result of the procedure. State v. Bright, 98-0389 at p. 18, 776 So.2d at 1145. In determining whether the ruling on a defendant's suppression motion is correct, an appellate court is not limited to the evidence adduced at the suppression hearing, but may also consider evidence admitted at trial. State v. Davis, 02-1008, p. 6 (La.App. 5 Cir. 2/25/03), 841 So.2d 952, writ denied, 03-0948 (La.11/7/03), 857 So.2d 516.
At the suppression hearing, Agent Dufrene testified that he showed a photographic lineup to Agent Carter at the Detective Bureau. Dufrene testified that he was able to compile the lineup after receiving a description and photograph of the subject, along with a field interview card. The description he received was of a black *507 man wearing a red shirt and tan pants. Dufrene testified that Carter selected photograph number five from the lineup. It was a photograph of defendant. Dufrene testified that he did not suggest to Carter which photograph he should select. Nor did he offer Carter anything in exchange for the identification.
Carter testified at the motion hearing that he watched the videotape of the cocaine transaction five minutes before viewing the photographic lineup. He selected photograph number five, the photograph of defendant, from the lineup. Carter also identified defendant at the suppression hearing as the man from whom he purchased crack cocaine on October 1, 2002. He testified that Dufrene did not suggest to him which photograph to select.
Defendant contends that the photographic lineup was suggestive in that defendant was the only one in the lineup who wore a tank top and braided hair. Defendant argues that the differences served to focus Carter's attention on his photograph.
Strict identity of physical characteristics among the individuals depicted in a photographic array is not required; however, the resemblance must be sufficient to reasonably test the identification. The question for the reviewing court is whether the procedure is so conducive to irreparable misidentification that due process was denied. Manson v. Brathwaite, 432 U.S. at 116, 97 S.Ct. at 2254; State v. Peden, 04-71, pp. 13-14 (La.App. 5 Cir. 5/26/04), 875 So.2d 934, 944.
A study of the photographic lineup shows it is composed of six black men, all of whom have mustaches. The fact that defendant is the only one pictured wearing a tank top makes no difference because all of the men in the lineup are pictured with various types of shirts. The tank top does not cause defendant to stand out. All of the men pictured in the lineup have close-cropped hair. It is not obvious from defendant's photograph that his hair is styled in braids. On the contrary, his hair looks similar to that of the other individuals in the lineup. Defendant's appearance in the photograph does not cause him to stand out.
We find that the identification procedure was not suggestive. Therefore, we need not reach the question of whether there was a substantial likelihood of misidentification. In any case, we also find there was little or no likelihood of misidentification. The transaction took place during daylight hours. Carter's testimony and the videotape evidence show that Carter was able to get a good look at the perpetrator. Deputy Zeagler testified that Carter gave him a description of the perpetrator and his location over the radio after the transaction was completed, and he found defendant based on that description. Dufrene then used the Polaroid photograph of defendant that Zeagler took to compile the lineup. Therefore, the trial court correctly denied defendant's motion to suppress identification.

ASSIGNMENT OF ERROR NUMBER TWO (PRO SE)
By this pro se assignment, defendant contends the trial court erred in denying his motion to suppress the arrest warrant, arguing that the affidavit in support of the warrant contained inaccurate information. The record does not contain a written motion to suppress or quash as to the arrest warrant. Moreover, defendant's motion to suppress the evidence did not pertain to any evidence seized pursuant to defendant's arrest. There was, in fact, no evidence seized following defendant's arrest.
The only reference the defense made below to the validity of the arrest warrant *508 was in argument, by counsel, at the hearing on defendant's motions to suppress evidence and identification. At that hearing, defendant's counsel argued that, at Mr. McCloud's request, he would ask the Court to take judicial notice that the arrest warrant contained an error as to the date. Counsel went on to explain that the arrest warrant alleged defendant had committed the crime on September 1, 2002 and the warrant was signed on October 28, 2002. The affidavit attached to the warrant stated that the crime was allegedly committed on October 1, 2002. Therefore, defendant's counsel argued there was a faulty arrest warrant, as well as a faulty, tainted photo lineup.
After hearing some additional argument from the parties concerning the validity of the photographic lineup, the trial judge stated, "At this time the motion is denied." It is apparent that the court's ruling pertained not to the arrest warrant, but to defendant's motions to suppress the identification and evidence. The trial court did not rule on any motion having to do with the arrest warrant. There is not, therefore, anything for this Court to review.

ASSIGNMENT OF ERROR NUMBER THREE (PRO SE)
Defendant complains that the evidence at trial was insufficient to support his conviction, because the state failed to prove that the narcotics transaction occurred within one thousand feet of a school. When issues are raised on appeal as to sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine sufficiency of the evidence. When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any issues regarding trial errors become moot. State v. George, 95-0110, p. 6 (La.10/16/95), 661 So.2d 975, 978; State v. Conner, 02-363, p. 7 (La.App. 5 Cir. 11/13/02), 833 So.2d 396, 401, writ denied, 02-3064 (La.4/25/03), 842 So.2d 396.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291; State v. Williams, 99-223, p. 6 (La.App. 5 Cir. 6/30/99), 742 So.2d 604, 607.
LSA-R.S. 40:981.3(A)(1) prohibits certain violations of the Uniform Controlled Dangerous Substances Law within 1000 feet of school property as follows:
Any person who violates a felony provision of R.S. 40:966 through 970 of the Uniform Controlled Dangerous Substances Law while on any property used for school purposes by any school, within one thousand feet of any such property, or while on a school bus, shall, upon conviction, be punished in accordance with Subsection E.
....
C. For purposes of this Section:
(1) "School" means any public or private elementary, secondary, vocational-technical school, or any public or private college or university in Louisiana.
(2) "School property" means all property used for school purposes, including but not limited to school play grounds, as well as any building or area owned by the state or by a political subdivision and used or operated as a playground or recreational facility and all parks and *509 recreational areas administered by the office of state parks.
At trial, Agent Dufrene testified that he measured the distance between the intersection of Fields and Meyers (the location of the cocaine sale) and Ames School, using a "ruler tape." He further testified that the distance was well within one thousand feet. Dufrene's testimony was uncontradicted. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Bartley, 00-1370, p. 5 (La.App. 5 Cir. 2/14/01), 782 So.2d 29, 32, writ denied, 01-0717 (La.2/22/02), 809 So.2d 981.
Based on the foregoing, we find there was sufficient evidence at trial to support defendant's conviction. Therefore, defendant's conviction of distribution of cocaine within one thousand feet of a school is affirmed.
Accordingly, we affirm defendant's conviction and sentence and remand the matter to the trial court for further proceedings as discussed above.
CONVICTION AND SENTENCE AFFIRMED; MATTER REMANDED.
NOTES
[1] A writ (No. 2004-K-3195) was filed with the Louisiana Supreme Court on December 28, 2004. As of the writing of this memorandum, there has been no action by the Supreme Court.
[2] The defendant in Green has filed a pro se application for writs in the Louisiana Supreme Court.