WALTZER, J.
STATEMENT OF CASE[1]
On 4 December 1998, the defendant, Noel Dean, was charged by bill of information with one count of armed robbery of Rhonda Achee in violation of La.R.S. 14:64, one count of attempted armed robbery of Scott Yrle in violation of La.R.S. 14:(27)64, two counts of attempted first degree murder, of Rhonda Achee and of Scott Yrle, in violation of La.R.S. 14:(27)30, and one count of possession of a weapon by a convicted felon in violation of La.R.S. 14:95.1.[2] The defendant entered pleas of not guilty to all counts on 9 December 1998.
A preliminary hearing and hearing on motion to suppress were held on 18 March 1999. The trial court found probable cause and denied defendant’s motions to suppress identification, evidence and statements. A jury trial was begun on 8 June 1999; however a mistrial was declared. Following trial on 6 July 1999 a jury found defendant guilty as charged of armed robbery of Rhonda Achee, guilty of | ¡¡.attempted manslaughter of Scott Yrle, guilty of attempted simple robbery of Scott Yrle, and not guilty of attempted first degree murder of Rhonda Achee.[3]
On 16 July 1999, the trial court sentenced defendant to serve thirty years at hard labor with credit for time served on the armed robbery conviction. The defendant was sentenced to three years at hard labor with credit for time served on the attempted simple robbery conviction. On the attempted manslaughter conviction, the trial court sentenced defendant to twenty years at hard labor, with credit for time served. The sentences were to be served concurrently.
*604 The State subsequently filed a multiple bill of information.. A multiple bill hearing was held on 6 October 1999, at which the trial court found defendant to be a third offender and indicated he would be sentenced to life imprisonment. However, defense counsel pointed out inadequate Boykinization on one of the predicate offenses in that defendant had not been advised, prior to his guilty plea, that he had a right to trial by judge or jury.[4] The trial court deferred sentencing and a second multiple hearing was held on 30 May 2000 at which the trial court adjudicated the defendant to be a second felony offender, vacated the sentence imposed on the armed robbery conviction and resentenced defendant to serve fifty years at hard labor with credit for time served. The twenty year sentence for manslaughter was confirmed as running concurrently.

STATEMENT OF FACT

IsAt approximately 1:00 a.m. on 6 October 1998, Rhonda Achee and Scott Yrle went in search of crack cocaine. Yrle was driving a Ford Taurus. Achee was in the front passenger seat. Yrle found a seller in the area of Leonidas Street. The dealer gave Yrle a rock of crack cocaine.[5] Yrle then gave the dealer a twenty dollar bill. When the dealer noticed that the bill was torn, he stated he did not want that bill. Yrle proceeded to return the rock of crack cocaine to the dealer. At that time, the defendant came from behind a building with a rifle and told Yrle and Achee to get out of the car. Yrle floored the gas pedal, and the defendant started shooting. After they had gone about one half block, Yrle told Achee that he could not feel his legs to drive. Achee put her foot on the gas pedal and grabbed the steering wheel, turned the corner and put the car into park. Achee got out of the car and saw the defendant chasing them with the rifle. She jumped back into the car on the passenger side. The defendant ran to the driver’s side window and told them to get out of the car. Yrle told the defendant that he could not move and that the car was dead. The defendant then told Achee to give him everything she had. Achee threw her wallet to the defendant. While the defendant was going through the wallet, Achee hopped on Yrle’s legs and started the car. As she left the area, she heard more gunshots being fired. Achee drove for about a block when she asked two elderly men for directions to the nearest hospital. They gave her directions to Ochsner Hospital. When Achee arrived at the hospital, she told the emergency room personnel that she had a shooting victim in the car.
Achee spoke with Detective Turner later that morning. She told the detective that the perpetrator was wearing a white T-shirt with fluorescent writing and dark jeans. After speaking with Detective Turner, she went with the officer to |4the scene of the shooting where she identified the defendant as the shooter. Achee also identified her belongings and currency taken by the defendant. Prior to trial, Yrle could not identify the defendant as the shooter. However, at trial, he identified the defendant as the person who shot him.
In the early morning hours of 6 October 1998, Officers Ken Bowen and Julie Basha responded to a call of a suspicious person in the area of Leonidas and Green Streets. The officers were in uniform and driving a marked vehicle. The officers were looking for two black males. One of the subjects *605 was described as wearing a white T-shirt and dark colored pants and armed with a rifle. When the officers arrived at the location, they observed two black males walking in the street with their backs to the police car. One of the men was wearing a white T-shirt and dark jeans and was armed with a rifle. When the men turned around and saw the police vehicle, they ran into an alleyway on the side of 1718 Joliet Street. The officers exited their vehicle and pursued the subjects on foot. Officer Bowen was able to apprehend the defendant, but the other subject got away. The defendant was wearing a white T-shirt and dark jeans and was carrying a rifle. Upon apprehending the defendant, the officer confiscated the rifle and noted that it was loaded. The defendant gave the officer false information suggesting that he was a juvenile. The defendant was then arrested for curfew violations. In a search incident to the defendant’s arrest, Officer Bowen found credit and business cards in the name of Rhonda Achee in the defendant’s pockets. The defendant could not explain to the officer why he had a woman’s credit and business cards in his possession. The officer also found currency in the defendant’s pockets, including a a twenty dollar bill with a torn corner. The officers then set up a perimeter around | ¡¡the 1700 block of Joliet to apprehend the second subject, but the subject was not found that night.
While the officers were waiting for a K-9 unit, they heard a dispatch concerning a shooting at the intersection of Hickory and Leonidas Streets, the victims of which were at Ochsner Foundation Hospital. A police officer and a detective went to the hospital to speak with the victims.
Later, Detective Turner arrived on the scene with Rhonda Achee, who identified the defendant as the shooter in a show-up identification. She also identified the credit and business cards found on the defendant as belonging to her. Ms. Achee further identified a twenty dollar bill with a torn corner that the defendant had taken from her.
Detective Jimmy Turner participated in the investigation of the armed robbery and attempted murder. In the early morning hours of 6 October 1998, the officer responded to a call of a shooting in the 1700 block of Leonidas Street. When the officer arrived on the scene, he spoke with other officers and learned that the victims had been taken to Ochsner Hospital. Detective Turner went to the hospital and spoke with Ms. Achee. The officer took Ms. Achee back to the scene where she identified the defendant as the shooter. She also identified the belongings which the defendant had taken from her.

ERRORS PATENT

A review of the record reveals errors in defendant’s sentencing. At the sentencing hearing on 16 July 1999, the trial court sentenced the defendant to serve three years at hard labor without benefit of probation, parole or suspension of sentence on the conviction for attempted simple robbery. However, La.R.S. 14:65 and La.R.S. 14:27 do not prohibit the benefit of probation, parole or suspension of | ^sentence upon a sentence imposed for attempted simple robbery. The trial court erred in denying eligibility. State v. Bell, 543 So.2d 965 (La.App. 4th Cir.1989). Therefore, the trial court’s denial of these benefits must be deleted.
A review of the multiple bill hearing held on 30 May 2000, reveals that the trial court failed to state that the defendant’s sentence was to be served without benefit of probation, parole or suspension of sentence. After adjudicating the defendant a multiple offender, the trial court vacated the original sentence imposed on the armed robbery conviction and resen-tenced defendant to serve fifty years at *606 hard labor. The trial court did not state that the sentence was to be served without benefit of probation, parole or suspension of sentence. La.R.S. 14:64 and La.R.S. 15:529.1 prohibit these benefits for a multiple offender convicted of armed robbery. However, on appeal this Court will not correct errors favorable to a defendant where the issue is not raised by the State. State v. Fraser, 484 So.2d 122 (1986).

FIRST ASSIGNMENT OF ERROR: The trial court erred when it denied defendant’s motion to suppress identification.

The defendant in the present case was identified by the victim in a “one-on-one” encounter which occurred only a short time after the crime. This type of “one-on-one” confrontation between a suspect and the victim is generally not favored but is permissible when justified by the overall circumstances, particularly when the accused is apprehended within a relatively short period of time after the occurrence of the crime and has been returned to the crime scene. State v. Walters, 582 So.2d 317 (La.App. 4 Cir.), writ denied, 584 So.2d 1171 (La.1991). These identifications have been upheld because prompt confrontation between the defendant and the victim promotes fairness by assuring the reliability of the ^identification (while the victim’s memory is fresh) and the expeditious release of innocent suspects. State v. Robinson, 404 So.2d 907 (La.1981).
Even were we to we accept the defendant’s allegation that the identification process was suggestive, we find the methodology did not give rise to a substantial likelihood of misidentification. In reaching this conclusion, we have considered the following factors: 1) the victim’s opportunity to view the defendant at the time the crime was committed; 2) the degree of attention paid by the victim during the commission of the crime; 3) the accuracy of any prior description; 4) the level of the victim’s certainty displayed at the time of the identification; and 5) the length of time elapsed between the crime and identification. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
In the present case, Ms. Achee identified the defendant in a one-on-one identification within an hour of the shooting. After speaking with Detective Turner at the hospital, she went with the officer to the crime scene. When the defendant stepped out of the police vehicle, she positively identified the defendant as the shooter. She testified at trial that she was positive of the identification. Ms. Achee stated that she was not forced or coerced into making an identification. She testified that the officers did not suggest that the defendant was the shooter.
At trial, Ms. Achee stated that she was able to clearly see the defendant during the perpetration of the robbery and the shooting. The incident lasted approximately six minutes during which time her attention was focused on the defendant. Further, Ms. Achee noted that the defendant was wearing the same clothes he had been wearing at the time of the shooting, i.e., a white T-shirt with fluorescent writing and dark jeans. In addition, Detective Turner and Officer [sBowen testified at trial that the defendant matched the description Ms. Achee had originally given.
The evidence presented at trial and at the suppression hearing indicate that the identification procedure used was not suggestive and that Ms. Achee’s identification was reliable. The trial court correctly denied the defendant’s motion to suppress identification.
This assignment is without merit.

*607
SECOND ASSIGNMENT OF ERROR: The trial court erred when it admitted Scott Yrle’s medical records into evidence.

On appeal, the defendant objects to the medical records as irrelevant and prejudicial. However, at trial, the defendant objected to the medical records solely on the basis that the records had not been properly authenticated. As the defendant’s argument on appeal is different from his basis for objecting at trial, the defendant is precluded from raising the issue on appeal. La.C.Cr.P. article 841.
This assignment of error is without merit.

THIRD ASSIGNMENT OF ERROR: The trial court erred when it adjudicated defendant a second felony offender.

The defendant suggests that the State failed to show that his prior guilty plea to simple robbery was valid and knowingly made.
In State v. Shelton, 621 So.2d 769 (La.1993), the Louisiana Supreme Court reviewed the jurisprudence concerning the burden of proof in habitual offender proceedings and found it proper to assign a burden of proof to a defendant who contests the validity of his guilty plea. In State v. Winfrey, 97-427 (La.App. 5 Cir.10/28/97), 703 So.2d 63, 80, writ denied, 98-0264 (La.6/19/98), 719 So.2d 481, the Fifth Circuit Court of Appeal set out the procedure for determining the burden of proof in a multiple offender hearing:
If the defendant denies the multiple offender allegations then the burden is on the State to prove (1) the existence of a prior guilty plea, and (2) that defendant was represented by counsel when the plea was taken. Once the State proves those two things, the burden then shifts to the defendant to produce affirmative evidence showing (1) an infringement of his rights, or (2) a procedural irregularity in the taking of the plea. Only if the defendant meets that burden of proof does the burden shift back to the State to prove the constitutionality of the guilty plea. In doing so, the State must produce either a “perfect” transcript of the Boykin colloquy between the defendant and the judge or any combination of (1) a guilty plea form, (2) a minute entry, or (3) an “imperfect” transcript. If anything less than a “perfect” transcript is presented, the trial court must weigh the evidence submitted by the defendant and the State to determine whether the State met its burden of proof that defendant’s prior guilty plea was informed and voluntary.
In the present case, the trial court adjudicated the defendant to be a second felony offender. The trial court concluded that the State had proved that the defendant’s prior guilty plea to simple robbery was valid and knowingly made.
The documents produced at the multiple bill hearing reveal that the defendant was charged with simple robbery in the Twenty-fourth Judicial District Court for the Parish of Jefferson. The defendant executed a waiver of rights and guilty plea form on 3 January 1994. The form is signed by the defendant, defendant’s counsel and the trial judge. The waiver of rights/guilty plea form sets out the rights which the defendant waives upon entering a guilty plea. By signing the form, the defendant indicated that he had been advised of these rights. The minute entry is a preprinted form in which it states that the defendant was advised of his rights by the trial court prior to entering a guilty plea. The minute entry also | inreveals that the defendant was represented by counsel that day. Thus, the State has met its initial burden of proving the existence of a *608 guilty plea and that the defendant was represented by counsel.
Once the State met this initial burden, the defendant was then required to produce affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. Defendant did not meet this burden in the case at bar. The defendant did not produce evidence in support of his argument that the guilty plea was not knowingly made. Therefore, the trial court correctly adjudicated the defendant to be a second felony offender.
This assignment of error is without merit.

CONCLUSION

Accordingly, we affirm the defendant’s convictions. Defendant’s sentence on the attempted simple robbery conviction is amended to delete the prohibitions against probation, parole or suspension of sentence. Defendant’s sentence on the attempted first degree murder conviction is affirmed. Defendant’s adjudication as a multiple offender is affirmed and the sentence imposed under the multiple offender statute is affirmed.
CONVICTIONS AFFIRMED. SENTENCE ON ATTEMPTED SIMPLE ROBBERY CONVICTION AMENDED AND, AS AMENDED, AFFIRMED. ADJUDICATION AND SENTENCE AS MULTIPLE OFFENDER AFFIRMED. SENTENCES ON REMAINING CONVICTIONS AFFIRMED.

. Darrick Darries was named as a co-defendant in counts one and two of the bill of information (armed robbery and attempted armed robbery charges). On 8 June 1999, Darries pled guilty as charged to both counts and was sentenced to five years at hard labor without benefit of probation, parole or suspension of sentence on each count. The Docket Master of the Criminal District Court shows a sixth count, of attempted manslaughter in violation of LSA-R.S. 14(27)31; however, there is no corresponding Bill of Information, nor was this charge referred to the jury. As such, it is not part of this appeal.

. The defendant was not tried on the charge of being a convicted felon in possession of a weapon and as such, this charge is not part of the present appeal.

.According to the court reporter's statement at the conclusion of the trial transcript, "The jury returned a verdict in open court of attempted manslaughter and attempted simple robbery as to victim, Scott Yrle. As to victim Rhonda Achee, not guilty. End of this proceeding." However, the trial judge announced, without objection, that the jury had found defendant guilty of armed robbery, attempted simple robbery and attempted manslaughter. The original record did not contain the actual jury verdict form or a transcript of the return of the jury verdict. At this Court's request, the verdict form and transcript were provided by the trial court and have been made a part of this record. These documents make it perfectly clear that the verdict announced by the judge is the jury’s verdict, and the reporter's comment at the conclusion of the transcript is incorrect.

. We find nothing in the record to support this Boykin defect; however, the prosecutor did not object to defense counsel's characterization of the guilty plea.

. Yrle identified Darrics as the drug dealer.